UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA,

   -v-                                                       No. 20-CR-126-LTS

MIGUEL BELARDO,

        Defendant.

--------------------------------------------------------x

## MEMORANDUM ORDER

Defendant Miguel Belardo has been detained on consent since his arrest, without prejudice to a bail application, at the Westchester County Jail ("WCJ"), while awaiting trial on charges of violating 21 U.S.C. § 846 by conspiring to distribute heroin, fentanyl, and crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A); and possession and use of a firearm in furtherance of a federal drug trafficking crime (distributing heroin, fentanyl, and crack cocaine), in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii) and 2. By letter, Mr. Belardo moves for release on conditions of bail in light of the COVID-19 health crisis. (Docket Entry No. 37.) The Government opposes Mr. Belardo's motion. (Docket Entry No. 39.) Mr. Belardo has filed a reply. (Docket Entry No. 45.) On April 7, 2020, the Court held a telephonic hearing on Defendant's motion. Mr. Belardo, having waived his personal appearance, appeared by counsel. The Court has considered carefully all of the written submissions and arguments, and has also reviewed Mr. Belardo's Pretrial Services report, dated February 20, 2020.

Because Mr. Belardo has been detained on consent until now, the Court must first address the threshold question of whether, under the criteria established by the Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3156 (the "Bail Reform Act"), he is someone who must, absent

satisfaction of the criteria for temporary release, continue to be detained.  Section 3142(e)(1) of the statute requires that an accused be detained pending trial where, following a hearing in accordance with section 3142(f), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Risk of flight must be shown by a preponderance of the evidence and danger to the community must be shown by clear and convincing evidence.  The factors that a judicial officer must consider "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" include "the nature and circumstances of the offense charged, including whether the offense is a crime of violence" or involves a firearm; "the weight of the evidence against the person"; "the history and characteristics of the person"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).  Further, because Mr. Belardo has been charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," there is a presumption that "no condition or combination of conditions will reasonably assure the [his] appearance . . . as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).

       The Court concludes that the Government has demonstrated by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Mr. Belardo's appearance in court as required, and by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community.  The Court further concludes that Mr. Belardo has not rebutted the presumption of danger to the community and risk of flight.  The Court's conclusions are based primarily on (i) the gravity of

the narcotics and firearms offenses with which Mr. Belardo stands charged, which subject him to two potential ten-year mandatory minimum sentences that must be served consecutively; (ii) the strength of the Government's evidence against Mr. Belardo, which includes video evidence of undercover drug buys and testimony from cooperating witnesses; (iii) Mr. Belardo's serious and lengthy criminal history, which includes thirteen arrests and ten felony convictions (including six violent felonies) dating back to 2010, when Mr. Belardo was just 14 years old; (iv) the Government's proffers, confirmed by Mr. Belardo's Pretrial Services report as to Mr Belardo's criminal justice history, concerning Mr. Belardo's commission of at least one drug sale to an undercover while serving multiple terms of supervised release; (v) Mr. Belardo's prior parole infractions and issues with failing to appear, and (vi) the Government's proffers regarding evidence of Mr. Belardo's membership in a violent gang.

Mr. Belardo has not rebutted the Government's proffers concerning his risk of flight and danger to the community. Indeed, Mr. Belardo recognizes that "[h]is [criminal] history is serious." (Docket Entry No. 45 at 7.) Mr. Belardo provides a lengthy explanation for his prior criminal conduct, but does not explain how he has addressed the issues identified or why he will not continue with his steady pattern of criminal behavior. Mr. Belardo's expressed aspiration of demonstrating to the Court that "he can be trusted to abide by all conditions of release" is insufficient to address his bail risk, as his unwillingness or inability to comply with court-imposed conditions is demonstrated by a lengthy history of disrespect for the law, and the Government has proffered evidence, as noted above, that he committed this charged conduct while subject to supervised release conditions, shortly after having finished a custodial sentence. (Docket Entry No. 37 at 1.) Under these circumstances, 18 U.S.C. § 3142(e)(1) requires the entry of an order of detention.

In the alternative to general release on conditions, Mr. Belardo seeks temporary release to closely monitored confinement at his mother's home, in his mother's custody, during the current public health emergency arising from the COVID-19 pandemic. He proffers that being in custody imperils his physical health and that it is "presently impossible to prepare [his] defense." (Docket Entry No. 37 at 1.)

Under 18 U.S.C. § 3142(i), the Court has the legal authority to grant relief from an order of detention entered under 18 U.S.C. § 3142(e). Section 3142(i) permits the temporary pretrial release of a defendant otherwise requiring detention into the custody of a U.S. marshal or other "appropriate" person where "the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Courts in this District have done so in appropriate cases; indeed, in limited circumstances, a serious medical condition can constitute a "compelling reason" under this provision. See, e.g., U.S. v. Perez, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application of 65-year-old defendant with COPD, pursuant to 18 U.S.C. § 3142(i), in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19"). Mr. Belardo has the burden of showing that temporary release is necessary under 3142(i). See U.S. v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).

Mr. Belardo's argument regarding temporary mitigation of the risk of flight because of his limited financial means and the travel restrictions imposed generally in the New York City area does not address sufficiently the very serious issue of the danger he poses to the community, given his history of involvement in violent crime and the strong evidence relating to

the instant charges. Similarly, third party custody by his mother, who appears to be a sincere, hopeful, and hard-working person, is insufficient in that Mr. Belardo has lived with his mother his entire life, including at the time of his arrest on the instant charges. The defense acknowledges that Mr. Belardo is easily led and has been under the influence of strong negative forces since he was an adolescent, although he now wants to break those ties. Supervision and policing resources are particularly strained during the current pandemic conditions, heightening the importance of protection of the community from persons and circumstances that pose documented threats.

The Court does not take lightly the elevated risk that Mr. Belardo's confinement poses for his own health and safety. The current public health crisis presents an elevated risk for those who are confined, as compared to those living in situations where social distancing is more feasible and where the most effective cleaning products are more readily available. The Government proffers that WCJ "has taken measures to protect inmates, including [adopting] new regulations designed to reduce large gatherings, to ensure that common areas are sanitized, and to screen new inmates for signs of COVID-19." (Docket Entry No. 39 at 3-4.) The Government also proffers that WCJ "has suspended personal inmate visits and is only permitting attorney visits in non-contact booths." (Docket Entry No. 39 at 4.)

Although, in certain cases, the specific medical conditions of individual pretrial detainees may create risks so substantial that they reduce or outweigh the safety risks posed by temporary release of such detainees, the Court finds that, in Mr. Belardo's case, the danger to the community presented by Mr. Belardo's release outweighs substantially even the generally heightened the risk of exposure to COVID-19 that he faces while in detention, particularly in light of Mr. Belardo's failure to identify concrete, imminent threats to his health beyond those

that affect all detainees. The logic underlying Mr. Belardo's arguments would require release of all pretrial detainees, regardless of the risk they pose to the community. That cannot be the solution. Mr. Belardo's understandable need and desire to maximize his ability to protect himself from infection do not reduce significantly the risk of community violence that he presents. The Court concludes that Mr. Belardo's present condition, which does not include any specific attributes that make him particularly vulnerable to COVID-19, does not provide a basis compelling enough for the Court to disregard the serious danger his release would pose to the public, particularly in light of the Government's proffers concerning Mr. Belardo's involvement in gang-related drug sales involving dangerous firearms.

The Court also finds Mr. Belardo's argument that temporary release is warranted because he faces challenges in preparing his defense insufficient to meet the statutory standard. Mr. Belardo has not identified any imminent need to prepare his defense other than an understandable general preference for early development of case strategy and a strong attorney-client relationship. This case is in relatively early stages, and the next proceeding is a status conference scheduled more than two months from now, on June 25, 2020. There is no trial, evidentiary hearing, or other substantive hearing upcoming in Mr. Belardo's case. Indeed, access to attorney-client communications at WCJ is currently more limited than it would be under non-pandemic circumstances. However, the Government proffers that, at present time, WCJ still facilitates non-contact attorney visits, videoconferencing, and telephone calls with counsel. Mr. Belardo is currently unable to use videoconferencing because his unit is quarantined. While the Court recognizes that the limitations on attorney-client communications are problematic in that it may constrain normal and desirable methods of case preparation, here, given the early stages of the case and the exigencies created by the COVID-19 crisis, the Court

concludes that the limitations placed on Mr. Belardo's access to counsel are not compelling enough to warrant temporary release under Section 3142(i).

The Court, accordingly, finds that Mr. Belardo has not sustained his burden of demonstrating that temporary release pursuant to 18 U.S.C. § 3142(i) is necessary or appropriate in his case.

The Court therefore grants the Government's application for detention pursuant to 18 U.S.C. § 3142(e) and denies Defendant's application for temporary release pursuant to 18 U.S.C. § 3142(i). An order of detention will be entered.

This Order resolves Docket Entry No. 37.

SO ORDERED.

Dated: New York, New York
April 7, 2020

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge